We'll turn to 22-7023, U.S. v. Sumka. Mr. Bunch. May it please the Court. My name is Trey Bunch. I represent Jeffrey Sumka. Good morning, Justice. Thank you for allowing oral arguments in this case. United States sentencing guidelines function to provide a fair basis from which defendants in all federal districts can be sentenced consistently, based on relevant factors rather than arbitrary factors. As such, it is vital that the U.S. sentencing guideline criteria be applied consistently. Argument today will primarily focus on Issues 1 and 3 of the appellant's brief in this case. Issue 1 pertains to Section 2A.3.2.B.2.B. And that section has two parts, Roman numeral I, Roman numeral II. Roman numeral I is applied when the offense involved a knowing misrepresentation of a participant's identity to persuade, induce, entice, or coerce the minor to engage in prohibited sexual conduct, or B.2, applicable here, states, or a participant otherwise unduly influenced the minor to engage in prohibited sexual conduct. So to summarize this provision, B.1, misrepresentation of identity to persuade, induce, coerce, or B.2, otherwise unduly influenced, otherwise, obviously referring back to the previous section. As to misrepresentation, one can see how this is a very specific criteria that a court can use as a reasonable basis to increase a person's guideline sentence range. Looking at the other provisions of 2A.3.2, such as 2A.3.2.B.1, which increases offense level for having custody care control or supervisory control, again, very specific criteria that can be used to define and differentiate a person that should be in a higher sentencing range. Also, 2A.3.2.B.3, use of a computer, very specific criteria, something that we can look to that can understand the justification why that characteristic would lead to a higher guideline range. The clause in 2A.3.2.B.2.B.II, B. Roman numeral II, is somewhat of a residual clause here. Otherwise unduly influenced arguably could include every single case involving sexual abuse of a minor. For every case where an adult has sex with a child, voluntary or otherwise, a persuasive argument could be made that the adult otherwise unduly influenced the child. That is why application note 3B, pertaining to the clause in B. Roman numeral II, states that the court should closely consider the facts of the case to determine whether a person's influence over the minor compromised the voluntariness of the minor's behavior. In this case, there's no indication in the record that the district court made any finding that the minor's volition was compromised, or why. In fact, from the record, it appears that the only factor the lower court considered was the 11-year age difference. Though the application notes do indeed state that there is a rebuttable presumption when there is a 10-year or greater age difference, because some degree of undue influence can be presumed, the application note does not say that a 10-year age difference is the very definition of undue influence. The presumption, however, is rebutted by the facts contained in this case. Namely, that the complainant voluntarily cohabitated with the appellant. There's no indication that this cohabitation was in any way coerced, or that the complainant was not free to leave, or that the appellant was asked to leave and refused. Also, the complainant voluntarily ran away from home to be with the appellant, and there is no evidence of coercion or knowledge on the part of the appellant. In addition... Is it coercion or what? Or knowledge? Yes. What do you mean there? What I mean is that there's no indication that the appellant knew the fact that the... from the pre-sentence report where these... the source of these facts, there's no indication that the appellant knew that she had run away from home to be with him. Oh, okay. Wait. I thought we were talking about coercion... Never mind. It seems to me what we're concerned about is the state of mind of the victim, not of the defendant. So his lack of knowledge, I'm not quite sure why that's relevant. The question is whether he was coercing her and whether she felt coerced, and you would seem to be addressing that by saying she left voluntarily to be with him, but... Yes, but I was addressing really both sides. I don't know that the second point is relevant here, but I think that it is not established, so worth mentioning. In addition, the complainant sent photographs of her unclothed breasts to the appellant. The government points out that they were sent at appellant's request. But there is no indication that this was anything but voluntary. The complainant took the photo. The complainant then uploaded the photo to Facebook Messenger, then made the keystrokes necessary to send that photo to the appellant, all voluntary. One could engage in speculation or assumption and conclude that the complainant was groomed and the appellant had some psychological control over the complainant because he is much older, but we are limited to what is contained in the record on appeal. There is no indication that the complainant's actions were anything other than voluntary or that her volition was compromised in any way. The government argued in their brief that because a neighbor had given information that the appellant was a dad figure to the complainant in the pre-sentence report, that somehow compromised the complainant's volition. But the information contained in the pre-sentence report only establishes that the neighbor's opinion was that the appellant was a dad figure. There are no specific observations, no specific facts that substantiate this opinion. What about the drugs he gave her? I was just getting to that, Your Honor. Good. The government in its brief argues that the complaining witness was also addicted to drugs. There is no indication in the record that the complainant was anything more than a drug user or that there was any interplay between the exchange of drugs and sex or drugs and company. At some point, you've got to rebut the presumption. I would think if he's giving her drugs, there's some sort of burden on the defendant to show that didn't create dependence on him. And to just say there's no evidence along those lines, I'm not sure that helps you when you have the burden. I would think that if he's providing her drugs and he's more than 10 years older than she is, the natural inference is that that relationship is very much a subordinate and dependent one. Don't you have the burden of establishing otherwise? There is a burden when there is a presumption, of course. But in this case, because we don't, I mean, that's an unknown thing, right? I mean, we don't know if she was addicted. We don't know the specifics of this. And that hurts you, doesn't it? I don't know. If it's unknown and you have the burden? I don't know that it does, and I don't know what could be presented in that regard other than to argue the fact that there is an absence of information on this topic. It's also well established that the complainant made extraordinary effort to continue her relationship with the appellant voluntarily. And I'll also add, Your Honor, that while there is a burden, and there's also a burden on the government, while there's a burden on the defense with the rebuttable presumption, there's also a burden on the government to show how this was undue influence. There was probably a dynamic where an older person exerted some influence, but some influence, some, I can't remember the word the court used, but some influence is not undue influence. Even when the appellant was not in proximity or contact with the complainant, she ran away from home and from child welfare custody to be with the appellant and stated that she still loved the appellant to the forensic interviewer. As to Issue 2, Do you think I could ask you a question about Issue 3? Yes. The vulnerable victim. I could use some help on what is the proper standard of review. Are you saying the district court made an error of law or an error of fact? And can you point to any case law guidance on that issue? Specifically as to that issue, whether it's law or fact, I do believe in this case that the court misapplied the law based on the facts. The U.S. versus Curley 544 F3rd 172 2nd Circuit 2008 states that an inquiry into a victim's vulnerability must be individualized and not based on broad generalizations about victims based on their membership in a class. Further, U.S. versus Rogan 121 F3rd 370 8th Circuit 1997, the government must not only establish that the defendant chose a vulnerable victim as the target for criminal activity, but the defendant targeted that particular victim because of her vulnerability. She's a WAIF. Wouldn't you call her a WAIF, W-A-I-F? I'm sorry? Doesn't she fit the description, the definition of a WAIF, W-A-I-F? And wouldn't a WAIF be about as vulnerable a person as you can run into? And given what he was doing with her, doesn't that look like exploitation of that vulnerability? I don't know that I agree with that, Your Honor. Well, convince me otherwise. So a component of this, as stated in my brief, is that 301.1b applies to offenses involving an unusually vulnerable victim, okay, in which the defendant knows or should have known of the victim's unusual vulnerability. And there's absolutely no indication in the record that the defendant knew or should have known about that she has run away from home, that she's a child dependent on some adult taking care of her. Obviously, the defendant probably knew that she was a child that somebody was taking care of, but that's present in all child abuse cases. Really? In most of the cases we have are familial, where it's a grandchild or a stepchild or something like that, where the person has a home. And I think in that situation, the person knows. I think that person is less vulnerable as a result of their situation. You're saying, oh, well, you've got limited time. I don't want to take it. In fact, I'm looking and my time has expired. Thank you for hearing my arguments. Thank you. Good morning, Your Honors. Counsel, may it please the Court. I'm James Braun on behalf of the United States. And why are you here? Did they send you to Oklahoma to help out? Is that what's going on? I'm doing a remote detail to help out the Eastern District of Oklahoma. There are a lot of you guys. So I'm appearing as a Special Assistant United States Attorney on behalf of that office. Now, this case involves the district court's application of the guidelines to the undisputed facts of the case. And in that type of situation, this court has held that it gives great deference to a district court. Could I just pick up where we left off on the third issue while it's still fresh? Yes. Are the facts underlying that issue undisputed? In other words, we have, as I take it, the court was saying there was an unstable home life, frequent placement with DHS. The underlying facts leading to the ultimate conclusion of vulnerable victim, I take it, are not in dispute. Is that fair? Right. And that's my point. And if that's the case, are we reviewing de novo because it's a legal determination as to whether we have a vulnerable victim? No. We would submit that it is reviewed for clear error, that the ultimate determination, you have the underlying facts that support the determination, but you also have the ultimate determination that the victim is vulnerable. I guess I have the same question for you. I was having trouble finding something definitive in the case law on this point. It seems on the one hand, if the sentencing guideline sets out criteria for what would be a vulnerable victim and the court applies those criteria to the undisputed facts, that sounds a lot more like a legal determination or at least a mixed question. It may be. It may be mixed. And I think that that's where the great deference comes into play, the district court's application of the guidelines to the facts. But you also have in the Evans case, the Eighth Circuit case that we cited in our brief, the Eighth Circuit found that the district court's finding of vulnerable victim was not clearly erroneous. And so I think that there is the ultimate factual finding of vulnerable victim. Okay. All right. And I realize you weren't involved in the district court proceedings. No, I was not. But at the district court proceedings, as I understand it, the court raised this vulnerable victim issue sort of late in the process, sua sponte. Right. The PSR wasn't pushing this as a recommendation. The government wasn't pushing this. The parties were given a few days to consider the issue. And then at the sentencing proceeding, the judge gets to the issue. The defense makes or Mr. French made his arguments. And then at that point, the government was asked to respond. The government said that they weren't – well, they didn't respond. They presented no additional facts, information. They didn't make any argument. And we're sort of – I think we're left with this question as to why – we know that the question is whether we have satisfaction of the vulnerable victim sentencing guideline. But based on the commentary, it's not just that the victim was vulnerable, but the victim was unusually vulnerable. So we can assume that this victim was vulnerable. But what made this victim unusually or particularly vulnerable? And given that the government just didn't present anything and the PSR didn't really address the issue, it seems like this issue is underdeveloped and underexplained even by the district court. And so what are we supposed to do with that? Well, we would argue that it's not underdeveloped. The fact that the government had no additional facts to offer doesn't say anything. Well, what was the source of the court's facts? It was a guilty plea. There was no trial. And the PSR didn't specifically address this issue. So what – was the court just working with what was in the PSR? Exactly. That's it. And the court doesn't need probation to analyze the facts for it. The court saw the facts in the pre-sentence report. All right. And it saw something that the parties didn't. And what about those facts made this victim – not suggesting the victim isn't vulnerable in the ordinary understanding of the word, but what made this victim different from other victims, making this victim unusually vulnerable? And did the court even explain that? Do we have a baseline of the ordinary vulnerable victim versus the unusually vulnerable victim? The court did explain it, and it's supported by the facts in the PSR. And that is the victim's unstable home life, the fact that she didn't have a support system, that she had been in and out of DHS custody throughout her life. What makes her any different from a lot of other victims in that regard? One would not find surprising that someone hasn't had a stable home life in circumstances like this. And I'm just having some trouble with the fact that this issue was raised sua sponte, wasn't addressed in the PSR, and the government didn't even do anything at sentencing, and here we are. Well, I don't think that that means that the district court's finding isn't supported by the record. And I think the district court saw something that probation had. We have no way of comparing this victim to what would be the vulnerable victim who isn't unusually vulnerable. How do we make that determination if we have no basis for comparison? All we have is the information about what happened in this instance. And I don't know that we need to compare to every case, and I would imagine that the district court has seen other cases. Well, why not? It calls for a particularly vulnerable victim, an unusually vulnerable victim. That suggests that there are some who are and some who aren't. And we don't have information of what is the typical victim who is not unusually vulnerable. No, that is correct. And I don't know even where that would be compiled, but I can imagine. Well, I don't either, but that's what the sentencing guideline calls for. No, that's true. But we do have other cases like Evans and Irving where the district court found vulnerable victim and the courts of appeals affirmed it on very similar facts. In Irving, we had the homeless children in Mexico who were sexually abused, and that was really the only basis. They were homeless. They didn't have parental supervision. That supported vulnerability. Did the district court cite any of these cases? No. No, but I don't think the district court necessarily needs to as long as it's supported by the facts. Why not? The district court has to make a determination as to why this particular victim stands out. Right, and our point is just that those other cases support the district court's finding. I understand. And the district court did make the finding, the factual finding, that these facts, the unstable home life, the frequent in and out with DHS, the lack of parental support, that that made her unusually vulnerable for reasons unrelated to her young age. That was enough. And then we have on appeal, we can point to other cases where district courts have made the same factual finding and that that has been affirmed on appeal. In Irving, in Evans, you had the 15-year-old victim who the only facts were that her father died when she was young and her mother was incarcerated. I'm wondering, though, if one of the problems here is the procedural reasonableness point that the court needs to give an explanation as to why. I mean, there are the facts, the unstable home life, in and out of DHS. I understand that. But that's it. And does the court say this is what makes this person different from others? Was there any explanation given by the court in that regard? No, the court didn't compare to other potential victims or other victims the court had seen. But I think that those facts alone are enough to say that that's an unusually vulnerable victim because she had those not every victim is going to have such an unstable home life and be placed in health and human services. You know, just from an empirical standpoint, I just don't know how you would know that this person has more of an unstable home life than the others. Right. And I don't think in these other cases, Irving and Evans, that we pointed to, there was an analysis of here's the typical victim and here's how this victim compared. And I think ultimately it comes down to that it's a clearly erroneous standard. And the deference is paid to the district court. And unless there's just no support in the record whatsoever for this finding. Is it clearly erroneous or is it just deference? Isn't there a difference between giving in the sentencing context, giving deference to the district court on the one hand, as opposed to saying that the determination itself was clearly erroneous? I think ultimately the determination of vulnerable victim is subject to clear error review. So it's not a legal determination at all? I don't believe so, no. And again, I would point to Evans for that where the court held that that wasn't clearly erroneous to make the finding of a vulnerable victim. I understand your argument. I'm taking up too much of your time. No, that's fine. That was obviously an important issue for the defense as well. The defense did not discuss the second issue. So unless the court has any questions on that, the pattern of activity, I would forego that issue and turn to the first issue. And that being the undue influence. Now, the court, the district court found that the defendant had not rebutted the presumption that there was undue influence here based on the substantial age difference between the defendant and the victim. And beyond that, the court affirmatively found that that substantial age difference supported the finding of undue influence. Now, the defense points to three facts that it argues rebutted the presumption that the victim voluntarily cohabitated with him, that she ran away to be with him, and that she sent him nude photos of her breasts. But he's asking the court to view those facts as if the victim was an adult who was making mature, rational choices. I think the better way to view it is as the district court seems to. And that's through the lens of a 12-year-old girl who viewed the defendant as a father figure. And that fact was in the PSR and it was undisputed that a family friend said that's how the victim viewed the defendant. And viewed through that lens, the district court's finding of undue influence was not clearly erroneous. And in fact, those facts support the finding of undue influence, especially asking the victim for photos of her nude breasts. That's an affirmative act on his part. And that's not even getting to his providing her with drugs when she was an addict. So we would argue that, again, the finding of undue influence is not clearly erroneous. And unless the court has any additional questions, I would cede the remainder of my time. Thank you, counsel. Thank you. Case is submitted. Counsel are excused.